**LAW OFFICE OF JEFFREY CAMPOLONGO**                    COUNSEL FOR PLAINTIFF
BY: JEFFREY CAMPOLONGO, ESQUIRE
IDENTIFICATION NO: 82608
50 MONUMENT ROAD, SUITE 101
BALA CYNWYD, PA 19004
484.434.8930
484.434.8931 FAX
JCAMP@JCAMPLAW.COM
WWW.JCAMPLAW.COM

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATTHEW BURRES** : | |
| **403 OLIVE STREET** : | |
| **PHILADELPHIA, PA 19123** : | **CIVIL ACTION** |
| **PLAINTIFF,** : | |
| : | **NO.:    17    1147** |
| **v.** : | |
| : | **JURY TRIAL DEMANDED** |
| **ALKEMY X, INC.** : | |
| **f/k/a SHOOTERS, INC.** : | |
| **601 WALNUT STREET, SUITE 1050S** : | |
| **PHILADELPHIA, PA 19106** : | |
| : | |
| **-and-** : | |
| : | |
| **JUSTIN B. WINEBURGH** : | |
| **ALKEMY X, INC.** : | |
| **f/k/a SHOOTERS, INC.** : | |
| **601 WALNUT STREET, SUITE 1050S** : | |
| **PHILADELPHIA, PA 19106** : | |
| **DEFENDANTS.** : | |
| _____ : | |

## COMPLAINT

### I.    INTRODUCTION

Plaintiff, Matthew Burres, is an adult individual who alleges through his counsel,

the **LAW OFFICE OF JEFFREY CAMPOLONGO**, that his rights have been violated pursuant

to the Fair Labor Standards Act (FLSA), 29 U.S.C. §201, *et seq.*, the Pennsylvania Wage

Payment and Collection Law (PaWPCL), 43 P.S. § 260.1, *et seq.* Mr. Burres seeks all relief

against Defendants that he is entitled to unpaid overtime/wages, liquidated damages,

interest, attorneys' fees and costs, and such other relief as the Court shall deem proper.

Mr. Burres is also suing for retaliatory discharge under the FLSA, 29 U.S.C. § 215(a)(3).   For his retaliatory discharge claim, Mr. Burres seeks all relief against Defendants that he is entitled to under the FLSA, including compensatory and punitive damages, back and front pay, attorneys' fees and costs.

Mr. Burres is also suing Defendants for breach of contract and related quasi-contract claims under state law.

Mr. Burres also seeks a declaratory judgment that the post-termination restrictions and covenants contained in his Employment Agreement with Defendants is not enforceable, pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq.*

## II.    PARTIES

1.    Plaintiff, Matthew Burres, is an adult male who resides at the above captioned address.

2.    At all times material hereto, Mr. Burres was an employee of Defendant, Alkemy X, Inc. f/k/a Shooters, Inc. (hereinafter referred to as "Defendant Alkemy").

3.    Defendant Alkemy is a creative content company offering live-action production, design, visual effects and post-production services for commercials, feature films and episodic television, as well as the production of branded content, network creative, integrated marketing, social/digital initiatives and long-form unscripted television.

4.    Defendant Alkemy is also an employer engaged in interstate commerce or in the production of goods for commerce.  It is believed and averred that Alkemy has gross operating revenues exceeding $500,000 (exclusive of excise taxes at the retail level which are separately stated). Alkemy is an employer covered by the FLSA and PaWPCL.

5.    Defendant Justin B. Wineburgh (hereinafter referred to as "Defendant Wineburgh")

is the President and CEO of Defendant Alkemy.

6.    As President and CEO, Defendant Wineburgh is an "employer" under the PaWPCL, 43 P.S. § 260.2a, because he had active decision-making control with respect to Plaintiff's employment and all decisions relating to Plaintiff's pay and wages.

## III.    <u>JURISDICTION and VENUE</u>

7.    Mr. Burres incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

8.    Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1337(a) relating to "any civil action or proceeding arising out of any act of Congress regulating commerce," 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 1331. This action is authorized and instituted pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §201, *et seq*. Mr. Burres further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under the laws of the Commonwealth of Pennsylvania.

9.    This Court has personal jurisdiction over Defendants because Defendants systematically and continuously engage in substantial interstate commercial conduct and business activity in Pennsylvania, and the case arises out of the Defendants' unlawful conduct within this Commonwealth.

10.    Venue is appropriately laid in the United States District Court for the Eastern District of Pennsylvania inasmuch as Defendants regularly conduct business within this District.

## IV.   FACTUAL ALLEGATIONS

### *Facts Relating FLSA and PaWPCL Claims for Unpaid Overtime*

11.   Mr. Burres was hired in or around June 2010 by Defendant Alkemy's predecessor

company, Shooters, Inc.

12.   According to the terms of his Employment Agreement dated June 29, 2010 with

Defendant Alkemy, Mr. Burres was hired for the position of "Editor, off-line and on-

line" at an annual base salary of $110,000 (or $52.88 per hour).  A true and correct

copy of the Employment Agreement is attached hereto as "Exhibit A."

13.   Mr. Burres was a non-exempt employee under the FLSA, among other reasons,

because his employment contract called for the payment of overtime wages.

14.   Specifically, the Agreement provided:

> a) Based upon the formula below, you will be paid for overtime
> on a monthly basis when Billed Hours exceed Billable Hours.
> The overtime will be paid by the end of the next month.
> (January overtime hours will be paid by the end of February,
> etc.).
>
> b) Billed hours – per ScheduA II [sic] report generated on a
> monthly basis.
>
> c) Billable hours – 90% of the actual hours available to be billed
> during the month.  For example, if you are in the office for a
> full day that is 8 hours available, if you are in a half-day that is
> 4 hours available, if you are out on vacation, sick day, personal
> day, or holiday that is 0 hours available.
>
> d) Overtime hours – Billed hours minus Billable hours.
>
> e) Overtime paid – Overtime hours times $60 per hour.
> Employee will paid [sic] on work billable to a client at a rate
> not to exceed $60.00 per hour.

15.   A normal work schedule at Alkemy was Monday to Friday, 9:00 a.m. to 5:30 p.m. for

a total of 8.5 hours with a 30 minute lunch break.

16.   Throughout Mr. Burres's employment at Alkemy, he regularly and routinely worked

more than 40 hours each week.

17. Mr. Burres regularly worked at least 5-10 hours/week in excess of 40 hours/week.

18. In fact, many weeks Mr. Burres would work in excess of 60 hours.

19. Mr. Burres would submit his hours in handwriting on a work order that was printed out by Alkemy. The work order would contain all of the job info and client info.

20. The company policy was to compute overtime on a monthly basis, meaning that anything billed over 160 hours for that month was considered overtime.

21. If Mr. Burres exceeded 40 hours in a week, Alkemy would routinely insist that he use a comp day to offset the overtime hours, in lieu of overtime compensation.

22. If Mr. Burres was not booked on a billable client, Alkemy required him to work on internal promotional projects such as a demo reel for the company's website. When these hours exceeded 40 hours in a week, he would not be paid overtime for it.

23. Despite working in excess of 40 hours virtually every week of his employment, he has received a total of approximately 25 overtime payments in 74 total months, for an average of one overtime payment every three months.

24. Upon information and belief, the total overtime paid to Mr. Burres between January 2011 and February 2017 was $26,075.91.

25. In the rare instances when he was paid overtime, it was at the rate of $60.00 per hour, which is less than one and one half times his regular rate.

26. In or around mid-2015, Mark Reidenauer, Senior Vice President of Operations for Defendant Alkemy approached Mr. Burres and declared that the company could no longer justify the overtime hours that Mr. Burres was reporting.

27. Since that time, Mr. Burres complained about not being paid overtime no fewer than six times to Mr. Reidenauer.

28. Each time it was discussed there was a constant debate and/or negotiation about

how much overtime Mr. Burres would be paid which usually resulted in Mr. Burres having to agree to accept a lesser amount.

29. Eventually, Mr. Burres stopped reporting overtime, even though he continued to work overtime hours, out of fear of retaliation and/or termination of his employment.

30. Mr. Burres also complained about overtime to Laura Barker, Executive Producer; Chris Grenier, Creative Director; and many other Alkemy employees over the span of his employment.

31. Mr. Burres no longer has access to his official financial records from Alkemy because he was locked out of his UltiPro account where such information is stored.

32. Defendant failed and/or refused to pay Mr. Burres overtime compensation, for any of the hours he worked in excess of 40 hours each work week with the exception of the relatively small amount of $26,075.91, noted above.

33. Upon information and belief, Defendant Alkemy did not pay Mr. Burres overtime compensation, for many of the hours he worked in excess of 40 hours each work week.

34. Defendant Alkemy has maintained these improper pay practices for at least the past three years and likely farther in the past than that.

35. Defendant Alkemy willfully violated the FLSA and PaWPCL by failing to pay Mr. Burres, a non-exempt employee, for hours he worked in excess of 40 hours/week and by maintaining company policies that violate the FLSA and PaWPCL.

### *Facts Relating to Retaliatory Discharge Claim*

36.    Mr. Burres was regularly and routinely working well past 5:30 p.m. during the week, sometimes even spending nights at the office and working weekends.

37.    When this happened, Mr. Burres was routinely told that he had to use the time he worked in excess of 40 hours/week as comp time.

38.    When it became evident that he was working overtime for free for the company, sometime in or around 2016, Mr. Burres concluded that he would no longer report his overtime hours.

39.    On several occasions, Mr. Burres complained about the company's failure to pay him overtime to Mark Reidenauer, Senior Vice President of Operations.  Mr. Burres also complained to Laura Barker, Executive Producer, Chris Grenier, Creative Director, and several others.

40.    Suddenly and without warning, on February 23, 2017, Mr. Reidenauer informed Mr. Burres that he was being terminated due to two no call/no shows on February 9, 2017 and February 15, 2017.

41.    These alleged attendance issues were the only reasons cited for his termination at the time of his termination meeting.

42.    Mr. Burres also received a letter on February 23, 2017 from Mr. Reidenauer citing the two no call/no shows on February 9, 2017 and February 15, 2017 and "unpredictable work hours and unreliable attendance" as the reason for his firing.

43.    Attendance records will show that Mr. Burres actually worked on February 15, 2017, despite being sick.

44.    As for February 9, 2017, Alkemy had a two-hour delayed opening due to a snowstorm.

45.    To the best of Mr. Burres's knowledge and belief, he worked on February 9, 2017.  If

for some reason, he did not work on that day, Mr. Burres believes and avers that he would have communicated his absence to the Creative Director, Chris Grenier, about not being able to come in to the office due to the snow.

46.    In any event, Mr. Burres was never apprised about a no call/no show on February 9th or February 15th at any time prior to his termination meting on February 23, 2017.

47.    There were never any prior written warnings, notice, or progressive discipline relating to Mr. Burres's attendance and work hours.

48.    On or about March 3, 2017, Mr. Burres was sent a letter from an attorney on behalf of Defendant Alkemy raising a whole new set of reasons for his separation; accusing Mr. Burres of violating his Employment Agreement; and threatening immediate legal action if he refused to sign an onerous Post-Termination Agreement.

49.    The threats contained in the March 3, 2017 letter, as well as the false allegations in the February 23, 2017 termination letter were clearly a pretext for terminating Mr. Burres.

50.    Defendant Alkemy wrongfully discharged Mr. Burres because of his ongoing complaints regarding Alkemy's illegal compensation and overtime practices.

## COUNT I
## FLSA

51.    Mr. Burres incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

52.    The FLSA requires employers such as Alkemy to pay employees overtime compensation of 'not less than one and one-half times' their regular rate of pay for all hours worked over 40 in a work week. 29 U.S.C. §207(a)(1).

53.    Alkemy violated the FLSA by failing to pay Mr. Burres time and a half overtime compensation, for all hours worked in excess of 40 hours/week.

8

54. Alkemy violated the FLSA by maintaining illegal policies and practices, including determining overtime based on an 160 hour monthly period instead of a 40 hour one week period and forcing Mr. Burres to use comp time in lieu of payment of overtime compensation.

**WHEREFORE**, Plaintiff seeks the following relief:

  (a) Unpaid Compensation;
  (b) Liquidated Damages;
  (c) Pre and Post Judgment Interest;
  (d) Reasonable attorneys' fees;
  (e) Recoverable Costs;
  (f) An allowance to compensate for negative tax consequences; and
  (g) Such other relief as the Court shall deem proper.

## COUNT II
## PaWPCL

55. Mr. Burres incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

56. The unpaid compensation Alkemy failed to pay Mr. Burres is considered wages under the PaWPCL.

57. Alkemy violated the PaWPCL by failing to pay Mr. Burres compensation, including time and a half overtime compensation, for all hours worked in excess of 40 hours/week.

58. As President and CEO, Defendant Wineburgh is individually liable pursuant to PaWPCL, 43 P.S. § 260.2a, insofar as he had active decision-making control with respect to Plaintiff's employment and all decisions relating to Plaintiff's pay and wages.

**WHEREFORE**, Plaintiff seeks the following relief:

- (a) Unpaid Compensation;
- (b) Liquidated Damages;
- (c) Pre and Post Judgment Interest;
- (d) Reasonable attorneys' fees;
- (e) Recoverable Costs;
- (f) An allowance to compensate for negative tax consequences; and
- (g) Such other relief as the Court shall deem proper.

## COUNT III
## FLSA RETALIATORY DISCHARGE

59.     Mr. Burres incorporates by reference each allegation contained in the preceding
        paragraphs as if the same were set forth more fully at length herein.

60.     Mr. Burres engaged in the protected activity of complaining about payment of
        overtime, he was terminated following his protected activity and Alkemy terminated
        him because of his protected activity.

61.     The alleged legitimate non-retaliatory reasons Alkemy gave to Mr. Burres for his
        termination are pre-textual.

62.     Alkemy's retaliatory discharge of Mr. Burres violates 29 U.S.C. §215(a)(3) and the
        public policy embodied in the FLSA.

        **WHEREFORE**, Plaintiff seeks the following relief:

- (a) Back Pay and Back Benefits;
- (b) Front Pay and Front Benefits;
- (c) Compensatory Damages;
- (d) Liquidated/Punitive Damages;
- (e) Pre and Post Judgment Interest;
- (f) Reasonable attorneys' fees;
- (g) Recoverable Costs;
- (h) An allowance to compensate for negative tax consequences; and
- (i) Such other relief as the Court shall deem proper.

## COUNT IV
## BREACH OF CONTRACT

63.     Mr. Burres incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

64.     The parties intended to, and did, enter into an enforceable Employment Agreement.

65.     The parties discussed and agreed to all of the essential terms of a contractual relationship, as memorialized in the Employment Agreement, dated June 29, 2010.

66.     Mr. Burres has satisfactorily fulfilled all of the contractual requirements, including working overtime hours.

67.     During the term of his employment, Mr. Burres performed his duties faithfully, diligently, completely, and professionally.

68.     Defendant Alkemy has breached the Agreement with Mr. Burres by failing to pay all overtime compensation under the Agreement or applicable law.

69.     As a direct and proximate result of Defendant's conduct, Plaintiff has been deprived of the benefit of the bargained for exchange and is entitled to judgment in his favor.

**WHEREFORE**, Plaintiff seeks the following relief:

   (a) Unpaid Compensation;
   (b) Pre and Post Judgment Interest;
   (c) Reasonable attorneys' fees;
   (d) Recoverable Costs;
   (e) An allowance to compensate for negative tax consequences; and
   (f) Such other relief as the Court shall deem proper.

## COUNT V
## QUASI CONTRACT CLAIMS
## UNJUST ENRICHMENT, DETRIMENTAL RELIANCE, ESTOPPEL

70.    Mr. Burres incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

71.    In the alternative or in the event the Court finds there is no binding contract between the parties, Plaintiff alleges that Defendant Alkemy has been unjustly enriched by services performed by Mr. Burres.

72.    Mr. Burres performed his duties faithfully, diligently, completely, and professionally and in doing so, conferred benefits on Defendant Alkemy by virtue of his performance.

73.    Without explicitly acknowledging such, Defendant Alkemy has fully appreciated the benefits conferred by Mr. Burres's performance, the retention of which would make it inequitable for Alkemy to retain without payment of value.

74.    Further, Mr. Burres relied to his detriment on the intentional and/or negligent representations of Defendant Alkemy, as more specifically set forth above.

75.    In order to prevent Mr. Burres from being further harmed by Defendant's representations, Alkemy should be judicially and/or legally and/or equitably estopped from showing that the facts are not as the Plaintiff understood them to be.

76.    As a direct and proximate result of Defendant's conduct, Plaintiff has been deprived of the benefit of the bargained for exchange and is entitled to judgment in his favor.

**WHEREFORE**, Plaintiff seeks the following relief:

   (g) Unpaid Compensation;
   (h) Pre and Post Judgment Interest;
   (i) Reasonable attorneys' fees;
   (j) Recoverable Costs;
   (k) An allowance to compensate for negative tax consequences; and

(l)  Such other relief as the Court shall deem proper.

## COUNT VI
## DECLARATORY JUDGMENTS ACT, 28 U.S.C. § 2201

77.   Mr. Burres incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

78.   The parties entered into an Employment Agreement, dated June 29, 2010 (see Exhibit "A").

79.   The Agreement contains various post-employment restrictions, including the following:

**SECTION 8. Noncompetition.**

(a)    Employee agrees that, during his employment, and for a period of one (1) year following the termination of Employee's employment by the Company for "Cause" or by Employee without "Good Reason," Employee will not, without the prior written consent of the Company's President, engage directly or indirectly, as an advisor, principal, agent, affiliate, promoter, partner, officer, director, employee, stockholder, owner, co-owner, or consultant in activities that involve the Business or which compete with the Company in the Business. The scope of this restriction is a 75-mile radius from Philadelphia's City Hall. For purposes of this Agreement, "the Business" shall mean products or services which are substantially the same as, similar to, or competitive with, products or services being offered or developed by the Company at the time of termination of Employee's employment.

(b)    The foregoing restriction shall not be construed to prohibit the ownership by Employee of up to five (5) percent of any class of securities of any corporation which is engaged, directly or indirectly, in the Business, provided that such ownership represents a passive investment and that neither Employee nor any group of persons including Employee in any way, either directly or indirectly, manages or exercises control of any such corporation, guarantees any of its financial obligations, otherwise takes any part in its business, other than exercising his rights as a shareholder, or seeks to do any of the foregoing.

**SECTION 9. No Solicitation.** Employee agrees that for a period of one (1) year following the termination of Employee's employment, for any reason, Employee will not, directly or indirectly:

(a)     call on or solicit any person, firm, corporation, or other entity who or which at the time of such termination was, or within two years prior thereto had been, a customer or client of the Company with respect to the products or services which are substantially the same as, similar to, or competitive with, products or services being offered or developed by the Company at the time of termination of Employee's employment; or

(b)     work on, or provide advice to, any project for the benefit of any person, firm, corporation, or other entity who or which at the time of such termination was, or within two years prior thereto had been, a customer or client of the Company with respect to the products or services which are substantially the same as, similar to, or competitive with products or services being offered or developed by the Company at the time of termination of Employee's employment; or

(c)     solicit the services of, hire, or attempt to hire, as an employee, principal, or independent contractor, any person who was employed by, or under contract to, the Company on a full or part-time basis, within twelve (12) months of the time of Employee's termination of employment.

**SECTION 10. Equitable Relief.**

(a)     Employee acknowledges that the restrictions contained in Sections 5, 6, 7, 8, and 9 hereof are reasonable and necessary to protect the legitimate interests of the Company, that the Company would not have entered into this Agreement in the absence of such restrictions, and that any violation of any provision of those Sections will result in irreparable injury to the Company. Employee represents that his experience and capabilities are such that the restrictions contained in Sections 8 and 9 hereof will not prevent Employee from obtaining employment or otherwise earning a living.

(b)     Employee agrees that any breach of the restrictions contained in Sections 5, 6, 7, 8, and 9 hereto will cause irreparable harm to the Company, the exact amount of which will be difficult or impossible to ascertain, and that the Company's remedies at law for any such breach will be inadequate. Therefore, Employee agrees that upon a breach of any of the covenants and agreements contained in Sections 5,

6, 7, 8, or 9 the Company shall be entitled to preliminary and permanent injunctive relief in any court of competent jurisdiction.

(c)     Employee irrevocably submits to the jurisdiction of any Pennsylvania court or federal court sitting in the Eastern District of Pennsylvania over any suit, action, or proceeding arising out of or relating to, Sections 5, 6, 7, 8, or 9. And Employee hereby waives, to the fullest extent permitted by law, any objection that he may now, or hereafter, have to such jurisdiction or to the venue of any such suit, action, or proceeding brought in such a court and any claim that such suit, action, or proceeding has been brought in an inconvenient forum.

(d)     In the event that any of the provisions of Sections 5, 6, 7, 8, or 9 hereof should ever be adjudicated to exceed the time, geographic, product, or service, or other limitations permitted by applicable law in any jurisdiction, then such provisions shall be deemed reformed in such jurisdiction to the maximum time, geographic, product, or service, or other limitations permitted by applicable law, but in no event to exceed the applicable limitation as set forth in this Agreement.

(e)     Employee agrees that, in the event the restrictions in Sections 8 or 9 hereof are not fully complied with, the period of the restrictions shall be extended to commence with the date of full compliance and to run fully thereafter, reduced only by the length of time, if any, between the cessation of Employee's employment and the first violation of these restrictions.

(f)     Notwithstanding any other provision of this Agreement, Employee agrees that he will provide, and that the Company may similarly provide, a copy of Sections 5, 6, 7, 8, and 9 of this Agreement to any business or enterprise (i) which Employee may directly or indirectly own, manage, operate, finance, join, control, or (ii) with which Employee may be connected as an officer, director, employee, partner, principal, agent, representative, consultant or otherwise, or in connection with which Employee may use or permit his name to be used.

(g)     If either party commences legal action to enforce any of the provisions of this Agreement or for any remedy or breach of this Agreement, the prevailing party shall pay the other party's reasonable costs and expenses, including reasonable attorneys' fees, incurred in such action.

\*     \*     \*

**SECTION 13.  General Provisions.**

(a)      This Agreement supersedes all prior agreements and sets forth the entire understanding between the parties hereto with respect to the subject matter hereof and cannot be changed, modified, extended, or terminated except upon written amendment approved by the Company and executed on its behalf by the Company's President.

(b)      With Employee's written consent, the Company shall have the right to assign this Agreement to any successor (whether direct or indirect, by purchase, merger, consolidation, or otherwise) to all or substantially all of the business and/or assets of the Company; provided that such assignee expressly assumes and agrees to perform this Agreement in the same manner and to the same extent that the Company would be required to perform it if no such succession and assignment had taken place.

80.     Mr. Burres seeks a declaratory judgment and/or injunction invalidating the foregoing post-termination restrictions and declaring that said provisions of the Agreement are not enforceable.

81.     The Declaratory Judgments Act provides that if "there is an actual controversy between the parties," the Court may "settle the parties' respective rights, even before there is a . . . breach of duty."

82.     Upon information and belief, the foregoing Employment Agreement is void of consideration; overbroad as to scope and time; vague and ambiguous with respect to the geographic area; and is not narrowly tailored.

83.     Moreover, the Agreement must be invalidated, as it relates to the post-employment restrictions, because the employer failed to obtain Mr. Burres's written consent to the assignment from the predecessor company, Shooters, Inc. to the current company, Defendant Alkemy.

84.   This Court, pursuant to the Declaratory Judgments Act, has the power, right, jurisdiction and authority to render such a declaratory judgment pursuant to the Declaratory Judgments Act.

85.   A declaratory judgment entered and rendered by this Court as requested by Plaintiff would terminate the uncertainty and controversy giving rise to these proceedings.

86.   The granting of judicial relief as requested by Plaintiffs is necessary and proper.

   **WHEREFORE**, Plaintiff seeks the following relief:

   (a) Judgment pursuant to the Declaratory Judgments Act that the post-termination restrictions in the Employment Agreement are invalid and unenforceable; and

   (b) Such other relief as the Court shall deem proper.

Respectfully Submitted,

March 15, 2017                    **By:**  [JC3646 - Validation of Signature Code]
Date                                    Jeffrey Campolongo, Esquire
                                        **LAW OFFICE OF JEFFREY CAMPOLONGO**
                                        50 Monument Road
                                        Suite 101
                                        Bala Cynwyd, PA 19004
                                        484-434-8930
                                        484-434-8931 fax
                                        *Counsel for Plaintiff*

17

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Matthew Burres
403 Olive Street
Philadelphia, PA 19123

## DEFENDANTS

Alkemy X, Inc. and Justin B. Wineburgh
f/k/a Shooters, Inc.
601 Walnut Street, Suite 1050s
Philadelphia, Pa 19106

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeffrey Campolongo, Esquire
Law Office of Jeffrey Campolongo
50 Monument Rd, Ste 101
Bala Cynwyd PA 19004
484-434-8930

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☒ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Fair Labor Standards Act (FLSA), 29 U.S.C. §201, et seq., the Pennsylvania Wage Payment and Collection Law (PaWPCL), 43 P.S. § 260.1, et seq., the Declaratory Judgments Act, 28 U.S.C. § 2201 et seq.
Brief description of cause:
Unpaid overtime, retaliatory discharge, breach of contract, declaratory judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.   **DEMAND $** >150,000.00   CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
03/15/2017

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

## ARBITRATION CERTIFICATION

**APPENDIX I**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| **MATTHEW BURRES** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | 17    1147 |
| **Alkemy X, Inc. f/k/a Shooters, Inc.** | : | NO. |
| | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                              (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits                                   (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.      (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                           (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                             (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                  ( X )

| | | |
|---|---|---|
| **March 15, 2017** | **JEFFREY CAMPOLONGO** | |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| | | |
| **484-434-8930** | **484-434-8931** | **jcamp@jcamplaw.com** |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAR 15 2017